OPINION
This appeal involves complications stemming from a commercial lease between Lemstone, Inc. ("Lemstone") and Ohio Valley Mall Co. ("Appellee"). John and Patricia Jenkins ("the Jenkinses") guaranteed payment on the lease. Appellee subsequently filed a complaint for breach of lease in the Mahoning County Court of Common Pleas that resulted in a consent judgment. In that judgment, Lemstone and the Jenkinses agreed to pay Appellee $32,094.05 at 18% interest.
On February 1, 2000, Appellee filed a garnishment action claiming that there was an outstanding balance on the consent judgment. The Jenkinses filed a motion for relief from judgment, claiming that the consent judgment had been fully paid. The trial court overruled the motion on June 7, 2000, and it is this decision which forms the basis of the instant appeal. For the following reasons, we affirm the decision of the trial court.
On March 20, 1989, Lemstone entered into a lease agreement with Appellee to rent space in the Ohio Valley Mall in Belmont County. The Jenkinses signed a personal guaranty of payment on the lease in the event of Lemstone's default. (4/6/2000 Reply Memorandum, Exh. 1). Patricia Jenkins is now deceased, and John Jenkins ("Appellant") is the sole party pursuing this appeal.
On June 13, 1995, Appellee filed a complaint against Lemstone and the Jenkinses in Mahoning County Court of Common Pleas for breach of the lease agreement.
On September 13, 1995, Appellee and the Jenkinses signed a Consent Judgment Letter Agreement (hereinafter "letter agreement"). (4/6/2000 Reply Memorandum, Exh. 2). This document was in essence a contract which contemplated that a separate consent judgment would soon be signed. The letter agreement provided terms to prevent Appellee from executing on the forthcoming consent judgment. The pertinent terms of the letter agreement are as follows:
 The parties agreed that the Jenkinses owed Appellee $42,094.05.
 The Jenkinses would pay Appellee $10,000 on or before September 22, 1995.
 The Jenkinses would grant Appellee a Consent Judgment for the remaining $32,094.05 at 18% interest per annum accruing from September 1, 1995.
 The Jenkinses would pay all future leasehold charges as they became due and payable.
 The Jenkinses would pay Appellee $1,000 per month, starting October 1, 1995, against the Consent Judgment at an interest rate of 10% per annum.
 The Jenkinses would grant Appellees in writing the right to terminate the lease upon 30 days written notice in Appellee's sole discretion.
If Lemstone failed to timely vacate the premises upon proper termination of the lease, the Jenkinses and Lemstone would be liable for liquidated damages of 50% of the monthly leasehold charges, above and beyond their liability for the normal monthly charges.
If the Jenkinses failed to comply with all the terms of the letter agreement, Appellee reserved the right to terminate the letter agreement and to levy execution on the Consent Agreement.
The terms of the existing lease between the parties remained in full effect, except as specifically modified by the agreement.
On September 29, 1995, the Jenkinses and Appellee entered into a consent judgment according to the terms of the September 13, 1995, letter agreement. The Jenkinses agreed to pay Appellee $32,094.05 plus 18% interest per annum accruing from September 1, 1995. On January 5, 1996, Lemstone entered into a similar consent judgment. No appeal was taken from either of the consent judgments.
Neither Lemstone nor the Jenkinses made full lease payments after December 1995, but the Jenkinses made payments of $1,000 per month after December 1995.
On March 11, 1996, Appellee sent a letter to the Jenkinses announcing its decision to terminate the Jenkinses' and Lemstone's right of possession of the leased premises. The letter specifically stated that Appellee was not terminating the lease itself. On March 28, 1996, Appellee sent a letter to both Lemstone and the Jenkinses requesting payment of $24,101.91 in lease arrearages. Appellee also stated its intent to execute upon the consent judgment if full payment was not made by April 10, 1996.
Appellee stopped billing the Jenkinses for leasehold charges after May 4, 1997. The parties agree that the lease was terminated, at the latest, by May 4, 1997.
On February 1, 2000, Appellee filed a notice of garnishment alleging that the Jenkinses owed $57,127.37 on the September 29, 1995, consent judgment.
On February 16, 2000, Appellant filed a combined request for continuance, motion for relief from judgment, and stay of execution. Appellant argued that, under the terms of the letter agreement, he had already paid off the consent judgment. Appellant argued that Appellee had misapplied the funds and was therefore liable for conversion. The only attachments supporting the motion were: 1) Appellant's affidavit stating that he had made the final payment on the consent judgment on December 5, 1998; and 2) an affidavit of Appellant's attorney detailing the need for a continuance. Appellant did not include any cancelled checks, accounting records, calculation worksheets, or any other evidence tending to prove that he paid the consent judgment and all accrued interest, or that he complied with the terms of the letter agreement.
On March 16, 2000, Appellee filed a brief in opposition, which included an affidavit of Roger Guglucello, Appellee's Credit and Collections Manager. The affidavit stated that the Jenkinses had paid all leasehold charges through December, 1995, and thereafter only paid $1,000 per month through December, 1998. (3/16/2000 Brief in Opposition, Exh. B). The supporting financial statements indicate that Appellee applied only part of the $1,000 monthly payment to the arrearage on the consent judgment; part was applied to interest accrued on the consent judgment; and the largest part was applied to past due rent and other leasehold charges. Appellee argued that Appellant had paid a total of $8,279.82 on the consent judgement, leaving a balance of $23,814.23, and that Appellant had paid $1,125.88 on accrued interest charges of $19,700.98, leaving an interest balance of $18,575.10. Appellee contended that Appellant owed a total of $42,389.33 on the consent judgment, including accrued interest.
On April 6, 2000, Appellant filed a reply memorandum to Appellee's brief in opposition. Appellant argued that Lemstone's lease was terminated on December 31, 1995; that Lemstone and Appellee entered into an accord and satisfaction over prior lease disputes; and that Lemstone received a lease for a new location in the Ohio Valley Mall. Appellant did not provide any evidence of an accord and satisfaction. Appellant argued that Appellee unilaterally and erroneously applied the $1,000 monthly payment to the unliquidated arrearage on Lemstone's lease rather than to the liquidated balance due on the consent judgment. To support his argument, Appellant attached a copy of a complaint for forcible entry and detainer allegedly filed by Appellee against Lemstone. (4/6/2000 Reply, Def. Exh. 3). Appellant also attached the March 11, 1996, letter from Appellee to Appellant which stated that Appellee was terminating the tenant's right of possession of the premises, "without terminating the Lease." (4/6/2000 Reply, Def. Exh. 4).
On May 10, 2000, Appellant withdrew a request to have an oral hearing on the motion, and agreed to submit the matter to the court on the pleadings, memoranda and supporting documents as filed.
On June 7, 2000, the trial court overruled Appellant's motion for relief from judgment. On July 6, 2000, Appellant filed this timely appeal.
Appellant's two related assignments of error state:
 "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT SINCE THE CONSENT JUDGMENT HEREIN HAS BEEN SATISFIED AND SHOULD BE DISCHARGED OF RECORD."
 "THE TRIAL COURT ERRED IN OVERRULING JENKINS' MOTION FOR RELIEF FROM JUDGMENT IN THAT THE CONTINUED PROSPECTIVE APPLICATION OF THE JUDGMENT IS INEQUITABLE AND UNJUSTIFIED."
Both of Appellant's assignments of error assert that he paid Appellant $1,000 per month, pursuant to the September 13, 1995 letter agreement, until December, 1998. Appellant asserts that on December 5, 1998, he made a final payoff payment of $390.65 against the consent judgment.
Appellant argues that Civ.R. 60(B) allows a party to seek relief from an existing judgment as follows:
"On motion and upon such terms as are just, the court may relieve aparty or his legal representative from a final judgment, order or proceedings for the following reasons:
"* * *"
"(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should haveprospective application;" (emphasis added).
Appellant contends that the judgment would have been satisfied if Appellee had correctly applied the $1,000 payments, and that Appellee's tortious misapplication of those payments makes it inequitable for the September 29, 1995 consent judgment to continue in effect.
Appellant further maintains that there is a distinction between Appellee's liquidated consent judgment claim and its unliquidated breach of lease claims stemming from Lemstone's alleged failure to pay rent after October of 1995. Appellant contends that Appellee did not litigate the subsequent breach of lease claims, and that Appellee should not be permitted to bypass the litigation process by simply appropriating Appellant's monthly $1,000 payments.
Appellant also argues that he was no longer bound as a guarantor of Lemstone's lease because Appellee terminated the lease by filing a complaint for forcible entry and detainer. Appellant does not elucidate his argument with any caselaw or other support.
Appellee argues that the denial of a Civ.R. 60(B) motion for relief from judgment is reviewed for an abuse of the trial court's discretion, citing Strack v. Pelton (1994), 70 Ohio St.3d 172, 174. Appellee contends that to be successful on his Civ.R. 60(B) motion Appellant must demonstrate: 1) a meritorious defense or claim if relief is granted; 2) a ground for relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and 3) that the motion was made within a reasonable time or, where Civ.R. 60(B)(1), (2), or (3) applies, not more than one year after the judgment was entered. GTE Automatic Elec. v. ARC Industries,Inc. (1976), 47 Ohio St.2d 146, paragraph two of syllabus.
Appellee contends that the Jenkinses did not make a prima facie case that they had a meritorious defense. Appellee argues that the Jenkinses did not provide any evidence that they actually made monthly payments, or that the payments equaled the amount of the consent judgment at 18% interest per year. Appellee asserts that the Jenkinses were not entitled to the more lenient payment terms of the letter agreement unless all of its covenants were fulfilled. Appellee argues that one of the terms of the letter agreement was the continued payment of all leasehold charges. Appellee argues that Appellant did not provide any evidence that he fulfilled all the terms of the letter agreement, including payment of leasehold charges. Appellee concludes that Appellant did not provide the trial court with an evidentiary basis with which to rule in his favor.
Appellee submits that it did apply the Jenkinses' monthly $1,000 checks in accordance with the terms of the September 13, 1995 letter agreement. Appellee contends that the letter agreement required the Jenkinses to payboth the monthly leasehold charges and an extra $1,000 on the consent judgment. Appellee maintains that, once Lemstone and the Jenkinses failed to make the leasehold payments, it could apply the monthly $1,000.00 to any portion of the outstanding debt.
Appellee also argues that the Jenkinses' duties as guarantor of Lemstone's lease did not evaporate merely because Appellee filed a notice of forcible entry and detainer. Appellee argues that a tenant's obligation to pay rent under a lease is not terminated as a result of an eviction for breach of the lease, citing Dennis v. Morgan (2000),89 Ohio St.3d 417, 418. Appellee contends that the Jenkinses' written guarantee remained in effect until May 4, 1997, when the parties terminated the lease and Lemstone moved to another location in the mall. Appellee also points to its March 11, 1996, letter to Appellant which described its intent to terminate Lemstone's right of possession of the property without terminating the lease. (4/6/2000 Reply, Def. Exh. 4).
Appellee asserts that Appellant cannot rely on the clause in Civ.R. 60(B)(4) which allows a court to provide relief from a judgment when, "it is no longer equitable that the judgment should have prospective application". Appellee argues that Civ.R. 60(B)(4) only provides relief, "to those who have been prospectively subjected to circumstances which they had no opportunity to foresee or control." Knapp v. Knapp (1984),24 Ohio St.3d 141, paragraph one of syllabus; Tsangaris v. Tsangaris
(July 9, 1997), Mahoning App. No. 94 C.A. 126, unreported. Appellee argues that the Jenkinses voluntarily entered into a letter agreement which modified the consequences of the September 29, 1995 consent judgment. Appellee maintains that the letter agreement enabled the Jenkinses to control the effect of the consent judgment. Appellee contends that Lemstone and the Jenkinses subsequently breached the letter agreement. Appellee argues that the Jenkinses should have understood that breaching the letter agreement would result in default on the consent judgment.
Appellee also argues that Appellant cannot invoke the "catch-all" provision of Civ.R. 60(B)(5) because that section only applies when a more specific section does not apply. See Strack, supra,70 Ohio St.3d at 174. Appellee maintains that Appellant had based its entire argument in the trial court on Civ.R. 60(B)(4), which is a more specific section than Civ.R. 60(B)(5). Appellee concludes that Appellant is precluded from relying on Civ.R. 60(B)(5) on appeal.
Appellee also argues that the Jenkinses did not file their Civ.R. 60(B) motion in a reasonable time. Appellee contends that Appellant knew as early as January of 1996 that he was being billed for ongoing leasehold charges and remained liable for those charges. Appellee argues that Appellant did not file his motion for relief from judgment until four years later. Appellant contends that four years is unreasonably long to wait to file a Civ.R. 60(B)(4) motion.
Although we are not convinced by all of Appellee's arguments, it is clear that Appellant did not submit sufficient evidence to the trial court to substantiate its motion for relief from judgment, did not file the motion in a reasonable amount of time and is not actually seeking relief from the consent judgment.
As Appellee correctly states, the denial of a Civ.R. 60(B) motion for relief from judgment is reviewed for abuse of discretion. Strack, supra,
at 174. To be successful, the moving party must demonstrate the three requirements of GTE Automatic Elec., supra: that it has a possible meritorious defense; that it is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and that the motion was timely presented. 47 Ohio St.2d at paragraph two of syllabus. We will deal with the three requirements of GTE Automatic Elec. in reverse order.
The third prong of GTE Automatic Elec. requires the movant to timely file the Civ.R. 60(B) motion. Because Appellant pursued his motion for relief from judgment under Civ.R. 60(B)(4), he was required by the rule to file, "within a reasonable time." Appellant allegedly made his final payment on the consent judgment, based on the terms of the letter agreement, in December of 1998. Appellee filed its notice of garnishment on February 1, 2000. On February 10, 2000, the motion was approved by the trial court and mailed to the garnishee. Appellant filed his motion for relief from judgment on February 16, 2000. If these were the only documents in the record relevant to the timeliness of Appellants' motion, we might conclude that it was filed timely. These are not, however, the only pertinent documents in the record.
Appellant himself has included in the record the March 28, 1996, letter from Appellee which put the Jenkinses on notice that the letter agreement had been breached and that Appellee would execute on the consent judgment unless all overdue lease payments were immediately paid. From this point on, the Jenkinses should have been aware that the letter agreement would no longer protect them from the terms of the consent judgment. The Jenkinses' entire basis for relief from judgment stems from the letter agreement. The Jenkinses should have petitioned the court within a reasonable time after they knew that the letter agreement was in doubt. The Jenkinses chose to ignore these events and waited until Appellee took further action by filing a motion for garnishment in February of 2000. It appears from the record that the relevant date for determining whether the Jenkinses' Civ.R. 60(B)(4) motion was timely filed was March 28, 1996.
The trial court's judgment entry overruling Appellant's Civ.R. 60(B) motion is silent as to whether the motion was filed in a reasonable time. The trial court is entitled to a presumption of correctness and a presumption that the court knew the law and acted accordingly. Fletcherv. Fletcher (1994), 68 Ohio St.3d 464, 468. A reviewing court will presume the validity of a judgment as long as there is evidence in the record to support it. Id. There is evidence to support that the Civ.R. 60(B)(4) motion was untimely filed. We may presume that this fact was, at least in part, the basis for the trial court's decision to overrule the motion. Therefore, we conclude that Appellant has not fulfilled the third prong of GTE Automatic Elec.
The second prong of GTE Automatic Elec. requires that the movant demonstrate that he was entitled to relief under one of the provisions of Civ.R. 60(B)(1) through (5). Appellant asserts that he is entitled to relief under two provisions of Civ.R. 60(B)(4): 1) the judgment has been satisfied; and 2) it would no longer be equitable for the judgment to have prospective application. As we will discuss below, Appellant does not qualify under either provision because, ultimately, he does not actually challenge the underlying judgment.
Appellant claims that he made enough payments to satisfy the consent judgment, using the payment terms of the letter agreement. It is obvious from the record and from Appellant's own arguments that he has not paid off the consent judgment under the terms provided in the consent judgment. Appellant alleges that he paid off the consent judgment with monthly payments of $1,000. The consent judgment did not provide for monthly payments. Instead, it stated the lump sum that was due. The consent judgment also stated that interest would accrue at 18% per annum. Appellant never suggests that his payments would have satisfied the judgment using an 18% interest rate. At best, he has alleged that he paid off the $32,094.05 judgment according to the terms of the separate letter agreement over three years at $1,000 per month at an interest rate of 10% per year. Appellant also asserts that Appellee misapplied the monthly payments, tortiously converting those payments by applying them to a supposed unliquidated debt. Appellant further disputes the validity of the unliquidated arrearage in lease payments. Taking all these factors into consideration, Appellant concludes that the consent judgment has been paid.
The difficulty with using Civ.R. 60(B) to make this argument is that Appellant does not actually request relief from the consent judgment. He accepts its validity and simply wants his payments to be credited to this judgment. The ultimate purpose of a Civ.R. 60(B), though, is to relieve a party from the effect of a judgment. In other words, the movant must contend that the judgment is in error in some way, either in its origin or in its continued effect. If the movant completely agrees with the judgment, then there is no reason to grant relief from it.
The Staff Notes to Civ.R. 60(B)(4) provide the following clarifying comments:
"The fourth provision [of Civ.R. 60(B)] would most likely operate to afford relief from the operation of a prospectively operating judgment such as an injunction. Thus an injunction may restrain a person and his heirs and assigns from violating a neighborhood restrictive covenant. After a time lapse and after a radical change in the character of the neighborhood, a person bound by the judgment might seek to have the operation of the judgment set aside as to him."
In contrast to the example in the Staff Notes, supra, Appellant is not arguing that subsequent events have changed the validity of the consent judgment. Appellant merely disagrees with Appellee's interpretation of the significance of certain events which occurred after its execution, e.g., the fact that Lemstone stopped paying rent. In the final analysis, though, Appellant agrees with the validity of the consent judgment itself. Thus, Appellant cannot qualify for relief from judgment under any of the provision of Civ.R. 60(B). We must conclude that Appellant has not met the second requirement of GTE Automatic Elec.
Appellant seems to have confused a Civ.R. 60(B) motion with a motion to obtain an order for satisfaction of judgment. "It is the standard procedure in Ohio for the party who is entitled to an entry of satisfaction of a judgment rendered against him to obtain an order for such entry on motion and proof of payment." Edwards v. Passarelli Bros.Automotive Service, Inc. (1966), 8 Ohio St.2d 6, 9. A party is entitled to a satisfaction of judgment order when a judgment has been paid in full. Darwish v. Harmon (1992), 91 Ohio App.3d 630, 632. Because Appellant merely wanted the trial court to apply his payments to the consent judgment and calculate whether or not the judgment was paid in full, the proper procedure was to seek an order of satisfaction of judgment.
Finally, we must examine whether Appellant met the first prong of GTEAutomatic Elec. This factor requires the movant to initially allege operative facts which would support a defense to the judgment. RoseChevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 20. Appellant sufficiently alleged that he had a meritorious defense by claiming that he had paid the judgment in full. To ultimately succeed on the motion, though, the movant must present some admissible evidence in support of the motion sufficient to convince the trial court that there is a viable issue for trial. Cleveland Excavating, Inc. v. Elyria Sav. Trust (Dec. 7, 2000), Cuyahoga App. No. 77910, unreported; Adomeit v. Baltimore
(1974), 39 Ohio App.2d 97, 103-104; East Ohio Gas v. Walker (1978),59 Ohio App.2d 216, 330. If the trial court is convinced that there is a viable issue for trial, then the motion should be granted. In granting the motion, a trial court should suspend the underlying judgment from its operation and should schedule a trial on the merits of the movant's defense. Society Natl. Bank. V. Val Halla Athletic Club RecreationCtr., Inc. (1989), 63 Ohio App.3d 413, 418; State ex rel. Citizens forResponsible Taxation v. Scioto Cty. Bd. Of Elections (1993),67 Ohio St.3d 134, 136.
For Appellant to prevail at trial, he would need to prove that he complied with the letter agreement, and through that compliance was able to rely on the 10% interest rate and installment payment plan also set forth in the letter agreement.
Part of that letter agreement involved the payment of leasehold charges. Therefore, Appellant also had a burden to provide the trial court with some admissible evidence that there were no leasehold charges to pay, that all leasehold charges were paid, or that he was excused from payment.
Appellant's first argument is that there were no outstanding leasehold charges because the lease was terminated on December 31, 1995. The sole evidentiary basis for this assertion is Appellant's own affidavit attached to the February 16, 2000, motion for relief from judgment. Appellant alleges that Lemstone was evicted from the rental space it had been occupying, but that Appellee agreed to allow Lemstone to lease another space in the mall. (2/15/00 Affidavit, p. 2). Appellee's brief also mentions that Lemstone and Appellee executed an accord and satisfaction. Appellant assumes that his affidavit is sufficient to raise a triable issue that there were no overdue lease charges.
Assuming arguendo that Lemstone was evicted, Appellant's theory of the legal effect of that eviction is in error. The law in Ohio is that a notice of forcible entry and detainer, i.e., an eviction notice, "does not terminate the obligations of the tenant to the landlord to pay rent for the remainder of the term * * *." Dennis v. Morgan, supra,
89 Ohio St.3d at syllabus; Frenchtown Square Partnership v. Lemstone, Inc. (May 10, 2001), Mahoning App. No. 99 CA 300, unreported. Appellee also notified Lemstone and Appellant on March 11, 1996, that it was terminating Lemstone's right of possession of the leased property but was not terminating the lease. Therefore, under the September 13, 1995 letter agreement, and under Appellant's personal written guarantee, he remained liable for the monthly leasehold charges, absent other evidence that the lease was terminated or the charges were excused.
The parties do not dispute the existence of a valid lease between Lemstone and Appellee. In arguing that the lease was terminated, Appellant did not provide the trial court with any lease amendments, documents showing that the lease was terminated, evidence that the leasehold charges were in dispute, evidence of Lemstone's compliance with timely vacating the premises, evidence of any accord and satisfaction on the lease charges, or any other evidence showing compliance with the letter agreement requirement that timely leasehold charges had to be paid. Apart from the largely hearsay assertions in Appellant's affidavit, there was no evidence tending to show that there was a disputed issue to be tried.
Appellant also argues that, even if there was a dispute over past due lease charges, Appellee was not privileged to apply the $1,000 monthly payments to those disputed charges. Appellant cites no legal authority for this theory, and as a general principle this theory is incorrect. "It is well settled that, when a creditor receives money from his debtor without any direction as to which debt the money shall be applied upon, the creditor may make the application to his best advantage." Swisher v.McWhinney (1901), 64 Ohio St. 343, 350; see also Sandy Supply Co. v.Superior Petroleum, Inc. (1987), 41 Ohio App.3d 270, 273.
A debtor does have the right, at the time of payment, to earmark a payment so that it will be directed to a particular debt. RelianceUniversal, Inc. v. Deluth Const. Co. (1981), 67 Ohio St.2d 56, 64;Stewart v. Hopkins (1876), 30 Ohio St. 502, paragraph thirteen of syllabus; City of East Cleveland Dept. of Taxation v. Davis (May 12, 1994), Cuyahoga App. No. 65251, unreported. "In Ohio, it is beyond dispute that when a debtor owes a creditor several debts, the debtor, when making a payment to the creditor, has the right to direct its application accordingly." Reliance Universal, Inc., supra, at 64. The direction or earmarking need not be express, but rather, may be inferred from the circumstances presented. City of East Cleveland Dept. ofTaxation, supra, citing Gaston v. Barney (1860), 11 Ohio St. 506, 510.
A party who asserts as a defense that full payment has been made bears the burden of proving that the payment was intended to apply to the particular debt in question. Blackwell v. International Union, U.A.W.Local No. 1250 (1984), 21 Ohio App.3d 110, 111. The debtor also bears the burden of proving that a partial payment was intended to apply to a particular debt. City of East Cleveland Dept. of Taxation, supra, at 2.
If the $1,000 monthly payments were not earmarked to be applied to the consent judgment, Appellee was free to apply them to either the leasehold charges or the consent judgment. Appellant did not give the trial court any basis upon which to determine that the payments were earmarked. There is no indication in the record that Appellant ever specifically directed Appellee to apply any payment of $1,000 solely to the consent judgment. Certainly, Appellant's affidavit could have, and did not, so indicate.
If Appellant hoped to rely on a theory that the parties' former course of dealing should have forced Appellee to apply the $1,000 payments to the consent judgment, the record does not support that there was a course of dealing. There is nothing in the record indicating that Appellee ever applied any $1,000 payment solely to the consent judgment. In fact, Appellant did not provide any evidence that he even made payments in the amount of $1,000. His February 15, 2000, affidavit merely states that he made "regular periodic payments," without specifying an amount. It is Appellee's evidence that shows that Appellant made payment of $1,000 after December of 1995. Appellee's records, though, indicate that all payments it received from Appellant were always spread across all the categories of debt that were owed, including leasehold charges, the lump sum consent judgment, and interest charges. (6/13/95 Complaint, Exh. A).
Without evidence, the trial court could hardly rule in Appellant's favor. Although Appellant was not required to convince the trial court that it would ultimately prevail on its defense, he did need to provide some admissible evidence tending to show that there was a viable issue for trial. We conclude that Appellant did not sufficiently allege and support that he had a viable defense, and that, therefore, the first prong of GTE Automatic Elec. has not been met.
Because Appellant did not meet any of the requirements of a Civ.R. 60(B) motion as set forth in GTE Automatic Elec., both assignments of error in this appeal are overruled.
For all the foregoing reasons, the decision of the trial court is affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs.