DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the November 1, 2005 judgment of the Fulton County Court of Common Pleas, which granted the parties a divorce and divided their martial property and liabilities. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellant, Regina A. Koder, asserts the following assignments of error on appeal:
 {¶ 2} "FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED BY GIVING TESTIMONY OF A GIFT OF APPELLEE'S STOCK CERTIFICATE IN *Page 2 
MIDWEST CONTRACTING, INC. WHICH CONTRAVENED THE WRITTEN TERMS OF THE STOCK TRANSFER ON THE CERTIFICATE ITSELF, IN VIOLATION OF THE PAROL EVIDENCE RULES CONTAINED IN R.C. 1302.05 AND THE COMMON LAW OF OHIO.
 {¶ 3} "SECOND ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN DETERMINING THAT SELF-SERVING ORAL TESTIMONY OF A GIFT OF STOCK WHICH CONTRAVENES THE WRITTEN INSTRUMENT OF CONVEYANCE ROSE TO THE LEVEL OF CLEAR AND CONVINCING EVIDENCE OF A GIFT SO AS TO RENDER THE STOCK `SEPARATE' PROPERTY UNDER R.C. 3105.171."
 {¶ 4} Appellee, Edward C. Koder, also filed a cross-appeal in this case and asserts the following cross-assignments of error:
 {¶ 5} "FIRST ASSIGNMENT OF ERROR: THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PLAINTIFF INTEREST ON THE APPRECIATED VALUE OF MIDWEST CONTRACTING INC. BACK TO THE DATE OF THE FILING OF THE DIVORCE.
 {¶ 6} "THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT HAD A $2,500 ARREARAGE AS OF NOVEMBER 17, 2004."
 {¶ 7} The parties in this case were married on November 25, 1995, separated in January 2003, and appellant filed a complaint for divorce on February 21, 2003. No children were born during the marriage. *Page 3 
 {¶ 8} While the parties stipulated to a division of the majority of the assets, they disputed in part whether appellee's 25 shares in Midwest Contracting, Inc. were non-marital assets. The following evidence was presented in this case.
 {¶ 9} Appellee and Doyle Drennen were in the construction business in the 1990s, d/b/a Triad Corporation. That company was dissolved in 1999. At that time, appellee returned his shares of the corporation to the corporation as part of a settlement agreement.
 {¶ 10} Meanwhile, appellee's children and Drennen's two children had started a new construction company, which was incorporated on October 25, 1996, as Midwest Contracting, Inc. On November 1, 1996, Midwest Contracting, Inc. issued 25 shares of the company to appellee's daughter, Miranda. Appellee's son testified that each of the shareholders paid $2,500 for their stock. Miranda testified that she did not know what she was doing regarding her involvement in the corporation. She did, however, work for the corporation doing its payroll and paying bills and taxes. This corporation had the same address as Triad Corporation. Appellant testified that this business was established so that appellee could obtain minority contracts that were given only to construction companies owned primarily by women. Appellee was an employee of the new corporation, but was neither a stockholder nor an officer.
 {¶ 11} On August 16 and 21, 1998, respectively, the Drennen children signed over their shares in Midwest Contracting, Inc. to Midwest Contracting, Inc. Miranda transferred her 25 shares, which then represented a 50 percent interest in Midwest Contracting, Inc., to appellee on May 7, 1999. She testified that she just gave the shares *Page 4 
to appellee. Appellee's son also testified that Miranda just signed over the certificates and gave them to her father. Appellee testified as well that he did not give Miranda any money for the stock. The value of the company at that time was approximately $213,000. Miranda testified that she did not prepare a gift tax return. Appellee testified that there were no corporate minutes documenting the gift. The preprinted form language on the back of the certificate states that it was transferred "* * * for value received * * * [and that Miranda did] sell, assign, and transfer her interest* * *" to appellee.
 {¶ 12} Appellant asserts that she is entitled to her marital portion of appellee's interest in the corporation, which was transferred to him during the course of the marriage. Her expert values appellee's shares in Midwest Contracting, Inc. to be worth $160,000.
 {¶ 13} Appellee asserts that his shares of stock in the corporation are non-marital assets and that appellant is only entitled to one-half of the appreciation on the value of the assets from May 1999 to date, or $26,667. He argues that appellant is not entitled to his half-interest in the corporation because it was gift to him from his daughter.
 {¶ 14} The court found that appellee's interest in Midwest Contracting, Inc. was a non-marital asset. The court further found that appellant was only entitled to one-half of the appreciation of the corporation, or $26,667, with interest since the date of the filing of the complaint for divorce. The court also found that appellee had a $2,500 arrearage as of November 17, 2004, on his temporary spousal support obligation.
 {¶ 15} Both parties filed an appeal from this judgment. *Page 5 
 {¶ 16} In her first and second assignments of error, appellant argues that the trial court erred in finding that the stock transfer of a 50 percent interest in Midwest Contracting, Inc. was a gift and, therefore, non-marital property.
 {¶ 17} The trial court's conclusions were based upon "a close reading of R.C. 3105.171" and "clear and convincing evidence." Appellant presents the same arguments on appeal that were before the trial court. First, she argues that the parol evidence rule applies to this transfer, which fell under the Uniform Commercial Code as a stock certificate transfer as well as under Ohio common law. She contends that the parol evidence rule prohibits testimony regarding the transfer of the stock which would contradict the language on the back of the stock certificate, which states that Miranda sold the stock to appellee for value.
 {¶ 18} The parol evidence rule bars evidence of prior or contemporaneous agreements that would contradict or alter the terms of a fully-integrated written agreement between the parties and their privies. However, it is not applicable to controversies between strangers to the instrument or between a stranger and one of the contracting parties. Bowman v. Tax Comm. of Ohio (1939),135 Ohio St. 295, 300-301, paragraph one of the syllabus; Clapp v. Huron Cty. BankingCo. (1893), 50 Ohio St. 528, paragraph three of the syllabus; andZunk v. Zunk (Feb. 16, 2001), 6th Dist. No. L-99-1167, at 5. Therefore, we find that the parol evidence rule did not bar admission of the evidence relating to the intent of the parties in making this transfer of stock.
 {¶ 19} R.C. 3105.171(A)(3) defines marital property as all "* * * personal property that currently is owned by either or both of the spouses, * * * and that was *Page 6 
acquired by either or both of the spouses during the marriage." Furthermore, the statute states that marital property is not separate property. The party asserting that the property is non-marital bears the burden of proving by a preponderance of the evidence that the property is non-marital property. Peck v. Peck (1994), 96 Ohio App.3d 731, 734.
 {¶ 20} Appellee correctly states that the trial court has broad discretion in its division of martial property. Worthington v.Worthington (1986), 21 Ohio St.3d 73, 74, citing Berish v. Berish
(1982), 69 Ohio St.2d 318, 319. However, the determination of whether an asset should be classified as marital or non-marital property is a mixed question of law and fact. The court's factual findings must be supported by competent, credible evidence. Kelly v. Kelly (1996),111 Ohio App.3d 641, 642, and Carpenter v. Carpenter, 6th Dist. No. WD-01-028, 2002-Ohio-526, at 2. Findings of fact and credibility determinations made by the trial court are generally presumed to be correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80
 {¶ 21} Appellee presented evidence in this case that he was not a shareholder in Midwest Contracting, Inc. until his daughter, Miranda, signed over her shares to him. Appellee, his son, and Miranda all testified that Miranda did not sell her shares; rather, she gave her father her shares. Therefore, we conclude that the preponderance of the evidence establishes that appellee acquired the shares by gift, and therefore, the shares were properly classified by the trial court as non-marital property. Appellant's first and second assignments of error are found not well-taken. *Page 7 
 {¶ 22} In his first cross-assignment of error, appellee argues that the trial court abused its discretion by awarding appellant interest on the appreciated value of Midwest Contracting, Inc. starting from the date of the filing of the divorce.
 {¶ 23} The trial court ordered that the interest should be assessed from the time of the filing of the divorce action because the case had extended far beyond the time expected for such an action. The complaint in this case was filed on February 21, 2003. The court's final judgment was entered on November 1, 2005. Appellee argues that appellant's share of the appreciated value of the corporation was not due and payable until the court's judgment. Therefore, under R.C. 1343.03(A), appellant was not entitled to interest prior to that date. Appellee contends that such an award was the equivalent of prejudgment interest under R.C.1343.03(C), which was not applicable in this case.
 {¶ 24} Appellee paid appellant the marital property judgment as ordered in the November 1, 2005 judgment without preserving his right to appeal. Appellee argues that if he is not allowed to argue error related to the Midwest Contracting, Inc. asset, neither should appellant. However, the two arguments are not similar. Appellant's claimed error relates to the classification of the 25 shares of stock as non-marital property. There is no judgment to be satisfied as to this issue. Appellee's claimed error relates to the award of interest on the judgment awarding appellant her share of the appreciated value of Midwest Contracting, Inc. stock. That judgment was satisfied by appellee paying the disputed amount to appellant. Therefore, we find appellee's claimed error is now moot. See Koder v. Koder, 6th Dist. No. F-05-033,2006-Ohio-2235. Appellee's first cross-assignment of error is not well-taken. *Page 8 
 {¶ 25} In his second cross-assignment of error, appellee argues that the court erred in finding that he had a $2,500 arrearage as of November 17, 2004. He argues that there are no journalized court judgments ordering appellee to pay spousal support and, therefore, there cannot be any arrearage.
 {¶ 26} We disagree with appellee's understanding of the record in this case. Appellant moved for temporary spousal support on March 6 and December 15, 2003. She stated in a motion filed November 4, 2004, that she received support in March, April, May, and June 2004, and moved for an order of spousal support of $800 a month retroactive to July 2004. In a motion dated October 4, 2004, appellant sought a pretrial conference to address the issue of temporary spousal support. Appellant stated in her motion that the court apparently noted in the record on February 9, 2004, that appellee should pay $400 per month as temporary spousal support. However, no judgment entry was ever entered on the court's journal. Furthermore, appellant indicated in her motion that appellee had failed to pay spousal support for the months of July through October 2004.
 {¶ 27} On November 17, 2004, the court ordered that appellee pay $500 per month, effective retroactive to July 2004, plus an additional $200 on the accumulated arrearages until paid in full. The court later found in its November 1, 2005 judgment that appellee had a $2,500 arrearage as of November 17, 2004 ($500 x 5 months from July through November). The court's November 17, 2004 judgment was conditioned upon the court resolving the issue of whether the proceedings were stayed by the Bankruptcy *Page 9 
Trustee because of appellant's pending bankruptcy proceedings in the Federal District Court. In an order dated December 21, 2004, the trial court found that the divorce proceedings were not stayed by appellant's filing of a bankruptcy action. Therefore, the court's November 17, 2004 judgment became effective.
 {¶ 28} We conclude that there was a court judgment that appellee pay spousal support beginning in July 2004. There was also a finding by the trial court that appellee had not paid support during July through November 2004. Therefore, the court correctly determined that appellee owed $2,500 in arrearages.
 {¶ 29} Appellant's second cross-assignment of error is not well-taken.
 {¶ 30} Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Fulton Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 10 
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR. *Page 1